**AFFIDAVIT IN SUPPORT OF WARRANT TO SEIZE
PROPERTY SUBJECT TO FORFEITURE**

I, Matthew Eversole, Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state that:

1. I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since April of 2021. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I am a Federal Law Enforcement Officer as defined in Rule 41 and am authorized by Federal Law to request a search warrant.

2. I have received training and have gained experience in all aspects of law enforcement, including interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures. I have not included every detail of every aspect of my training, education, and experience but have highlighted those areas most relevant to this affidavit.

3. Based upon your Affiant's training and experience, your Affiant is aware that drug dealers commonly possess large amounts of U.S. currency and/or other valuables which are the proceeds from unlawful drug trafficking; drug dealers commonly possess and utilize firearms to protect their drugs, assets and themselves; drug dealers commonly utilize vehicles to transport drugs, money, and firearms; drug dealers commonly hide/store drugs, money, firearms, and drug related contraband inside their residence or buildings, on their property, and/or in their vehicles; and drug dealers commonly utilize computers, tablets, smart phones, cell phones and other electronic devices to communicate with drug trafficking organization members and customers and to store information related to drug trafficking activities.

**PURPOSE OF AFFIDAVIT**

4. This Affidavit is being submitted in support of an Application for a Warrant to Seize Property Subject to Forfeiture authorizing the seizure of $10,000.00 in U.S. currency posted as bond with the Owsley County Circuit Court (hereinafter, the "Currency"). The Currency was utilized by Robert LUTES (hereinafter, "LUTES") to a post a cash bond bail for Tabitha Shackleford, Owsley Circuit Court Case #: 25-CR-00008-002, on March 24, 2025, to the Owsley Circuit Clerk in Owsley County, Kentucky.

5. As a result of my personal participation in this investigation, reports made to me by other agents and officers involved in the investigation, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information that I have reviewed and determined to be reliable, I declare that the facts contained in this Affidavit show that there is probable cause to believe LUTES has committed violations of 21U.S.C. § 841(a)(1), distribution and possession with the intent to distribute fentanyl and methamphetamine, a Schedule II controlled substances, and that the Currency constitutes proceeds of said violations.

**BASIS OF INFORMATION**

6. The information contained in this Affidavit is based upon my personal knowledge, my consultation with senior ATF agents, my review of certain records and documents, interviews of witnesses and defendants, and information provided by other law enforcement officers employed with the Kentucky State Police (KSP).

7. As a result of my training and experience as an ATF Special Agent, I am familiar with federal criminal laws, including 21 U.S.C. § 841(a)(1) as it relates to distribution of fentanyl or methamphetamine, both of which are Schedule II controlled substances.

8. This Affidavit is submitted for the limited purpose of securing a seizure warrant for the Currency. I have set forth only the facts that I believe are necessary to establish probable cause for the seizure of said property used to facilitate violations or represent proceeds from the violation of federal law specifically 21 U.S.C. § 841(a)(1), the distribution or possession with intent to distribute fentanyl and methamphetamine, Schedule II controlled substances. The information contained herein is not all the information I possess with respect to the commission of the crimes referred to herein, but only those facts necessary to establish probable cause for the seizure of the identified property. Additionally, the observations and facts contained herein are the collective facts of the agents and investigators assigned to this case. Additionally, the identity of the Confidential Informant (CI) is known to members of the KSP and have proven to be reliable in the past.

## FACTS ESTABLISHING PROBABLE CAUSE

9. The United States, including ATF and KSP DESI East, is conducting a criminal investigation of LUTES regarding violations of 21 U.S.C. § 841(a)(1).

10. On February 6, 2025, investigators utilized a CI to conduct a controlled purchase of suspected fentanyl from LUTES at his residence in Rogers, Kentucky, in the Eastern District of Kentucky. The CI traveled to LUTES's residence and entered and met with LUTES. The CI provided LUTES with buy funds in exchange for the suspected fentanyl and two (2) buprenorphine (i.e., suboxone) film in pharmaceutical packaging. The CI provided LUTES with $250 for the fentanyl and an additional $20 for the buprenorphine. The transaction was video/audio recorded. Upon completion, investigators met with the CI and obtained approximately 3.5 grams of suspected fentanyl, including packaging and the two (2)

buprenorphine film. Based upon law enforcement's training and experience, the purchased substance was consistent in color and form with fentanyl, a Schedule II controlled substance.

11. On February 12, 2025, investigators utilized a CI to conduct a controlled purchase of suspected fentanyl and a rifle from LUTES at his residence in Rogers, Kentucky. The CI traveled to the LUTES's residence and entered and met with LUTES. The CI provided LUTES with buy funds in exchange for the suspected fentanyl and a rifle. The CI provided LUTES with $450 for the fentanyl and an additional $90 for the rifle (the CI and LUTES agreed on $125 for the rifle with the CI owing LUTES the additional $35 at a later date). The transaction was video/audio recorded. Upon completion, investigators met with the CI and obtained approximately 7 grams of suspected fentanyl, including packaging and a Marlin, Glenfield Model: 60, .22 caliber rifle, Serial Number: 20534347. Based upon law enforcement's training and experience, the purchased substance was consistent in color and form with fentanyl, a Schedule II controlled substance.

12. On February 18, 2025, investigators utilized a CI to conduct a controlled purchase of suspected fentanyl from LUTES at his residence in Rogers, Kentucky. The CI traveled to LUTES's residence and entered and met with LUTES. The CI provided LUTES with buy funds in exchange for the suspected fentanyl. The CI paid LUTES $850 for the fentanyl. The transaction was video/audio recorded. Upon completion, investigators met with the CI and obtained approximately 14 grams of suspected fentanyl, including packaging. Based upon law enforcement's training and experience, the purchased substance was consistent in color and form with fentanyl, a Schedule II controlled substance.

13. On February 25, 2025, investigators utilized a CI to conduct a controlled purchase of suspected fentanyl from LUTES at his residence in Rogers, Kentucky. The CI traveled to

LUTES's residence and entered and met with LUTES. The CI provided LUTES with buy funds in exchange for the suspected fentanyl. The CI paid LUTES $850 for the fentanyl. The transaction was video/audio recorded. Upon completion, investigators met with the CI and obtained approximately 14 grams of fentanyl, including packaging. Based upon law enforcement's training and experience, the purchased substance was consistent in color and form with fentanyl, a Schedule II controlled substance.

14. On March 5, 2025, investigators utilized a CI to conduct a controlled purchase of suspected methamphetamine from LUTES at his residence in Rogers, Kentucky. The CI traveled to LUTES's residence and entered and met with LUTES. The CI provided LUTES with buy funds in exchange for the suspected methamphetamine. The CI paid LUTES $1050 for the methamphetamine along with $75 as a "down payment" on a firearm. The transaction was video/audio recorded. Upon completion, investigators met with the CI and obtained approximately 84 grams of suspected methamphetamine, including packaging. The suspected methamphetamine was submitted to the DEA Lab for testing where it was confirmed to be, in fact, methamphetamine with a net weight of 83.51 grams. Additionally, purity analysis showed that the substance was 77% pure with a pure substance weight of 64.3 grams.

15. On March 12, 2025, investigators utilized a CI to conduct a controlled purchase of suspected methamphetamine and a firearm from LUTES at his residence in Rogers, Kentucky. The CI traveled to LUTES's residence and entered and met with LUTES. The CI provided LUTES with buy funds in exchange for the suspected methamphetamine and firearm. The transaction was video/audio recorded. Upon completion, investigators met with the CI and obtained approximately 114 grams of suspected methamphetamine, including packaging and a Kel-Tec, Model: P-11, 9mm caliber pistol, Serial Number: A5528. The suspected

methamphetamine was submitted to the DEA Lab for testing where it was confirmed to be, in fact, methamphetamine with a net weight of 111.34 grams. Additionally, purity analysis showed that the substance was 80% pure with a pure substance weight of 89.07 grams.

16. On March 26, 2025, investigators executed Federal Search Warrant 5:25-MJ-5128-MAS. During the search of the residence, the following evidence was recovered: approximately twenty-six firearms (10 rifles, 8 shotguns, 5 revolvers, and 3 pistols), approximately 1,400 assorted rounds of ammunition, approximately 347 grams of suspected fentanyl/heroin, approximately 428 grams of suspected methamphetamine, approximately 2.6 pounds of suspected marijuana, approximately 245 grams of suspected gabapentin pills, 27 suspected suboxone tablets, 10 suspected clonazepam, drug trafficking equipment, drug paraphernalia, and $7,803 in U.S. Currency. This is just a brief summary and not a verbatim description of the items seized.

17. On March 26, 2025, investigators conducted an audio recorded interview with LUTES. LUTES was advised the Miranda Warnings prior to the interview and waived his rights to speak with investigators. LUTES began the interview by stating that he used to work, cutting timber but had quit for "quite a while" and got in "a hard spot" which caused him to "screw up" (referring to him selling narcotics). Although LUTES confessed to purchasing narcotics, he claimed, at first not to know much about narcotics. LUTES did admit that he sold methamphetamine and heroin. LUTES explained that he purchased the narcotics from an unknown black male in Lexington and that he had gone to Lexington more than once to purchase narcotics.

18. LUTES stated he spent $5,000 for the suspected heroin/fentanyl and $2,000 for the suspected methamphetamine which was discovered in the residence during the execution of

the search warrant. LUTES stated he would purchase a pound of methamphetamine for approximately $2,000. LUTES further stated that he sold an ounce of methamphetamine for $350. When questioned about the frequency of his narcotics trafficking, LUTES first claimed to selling narcotics to three to four people once a week for approximately two months previously. LUTES then stated that he started selling narcotics again approximately a month prior to his arrest after stopping the first time. After being advised of the penalties associated with a violation of 18 U.S.C. § 1001, LUTES revised his statement, admitting that approximately one to four people would stop by his residence daily to purchase narcotics. ATF utilized LUTES's social security number to investigate whether LUTES had any current or previous employment listed. The search returned negative results, indicating no current or previous listed employment. ATF also searched for records related to LUTES on the Kentucky Secretary of State's website for businesses, also returning negative results.

19. On March 30, 2025, LUTES made a jail call to an individual who investigators believe to be his sister. LUTES advised his sister that he paid two bonds. One of the bonds was in Beattyville and the other was in Owsley County.

20. On April 1, 2025, your Affiant contacted the Owsley Circuit Clerk. The Owsley Circuit Clerk verified LUTES utilized $10,000 in U.S. Currency to a post a bond for Tabitha Shackleford, Owsley Circuit Court Case # 25-CR-00008-002, on March 24, 2025, in Owsley County, Kentucky. Shackleford is under indictment in that matter for state charges involving Trafficking in a Controlled Substance First Degree, Trafficking in a Controlled Substance Third Degree, Receiving Stolen Property (Firearm), Possession of a Controlled Substance First Degree, Possession of Drug Paraphernalia, and Possession of Marijuana.

21. Based upon Affiant's training and experience, Affiant is aware that drug dealers commonly possess large amounts of U.S. currency and/or other valuables which are the proceeds from unlawful drug trafficking. Drug dealers will attempt to conceal these proceeds in undisclosed locations for safe keeping to be utilized for bond fees or other means of survival upon incarceration. Moreover, the United States can establish by a preponderance of the evidence that LUTES acquired more than $10,000 in U.S. currency during the time frame at issue and that there was no likely source for the Currency other than his drug-trafficking violations such that the United States is entitled to a rebuttable presumption pursuant to 21 U.S.C. § 853(d) that the Currency is forfeitable.

## CONCLUSION

22. Based on the foregoing, Affiant submits there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) have occurred and that the Currency constitutes proceeds of said violations, which is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a) and 853(a).

23. Your affiant, therefore, respectfully requests that the attached seizure warrant be issued authorizing the seizure of the Currency. I am requesting both a civil seizure warrant pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b) and a criminal seizure warrant pursuant to 21 U.S.C. § 853(f). For purposes of a criminal seizure warrant, an order under 21 U.S.C. § 853(e) would not be sufficient because the property is in the custody and control of a third-party custodian who could at any time release the Currency to LUTES, making it extremely difficult to locate and seize.[1] A dual civil and criminal seizure warrant ensures that the Currency will remain available for forfeiture.

---

[1] While 21 U.S.C. § 853(f) requires a determination that a restraining order pursuant to § 853(e) may not be sufficient to assure the availability of the property for forfeiture for issuance of a criminal seizure warrant, there is no similar requirement in 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b) for issuance of a civil seizure warrant.

The above information is true and correct to the best of my knowledge, information, and belief.

/s/ Matthew Eversole
Matthew Eversole, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Attested to by affiant by reliable electronic means per FRCrP 4.1 on this __15__ day of April, 2025.

Matthew A. Stinnett
United States Magistrate Judge
Eastern District of Kentucky